The first case on the call this morning is Isaac Cohen, Appalooh v. Chicago Park District. Case number 121800, agenda number 15. Counsel, are you ready? You may proceed. May it please the court, counsel, good morning, Heather Kyle on behalf of the Chicago Park District. The court should reverse the judgment of the appellate court and instead affirm the trial court's decision, which granted the Chicago Park District's motion for summary judgment. Summary judgment in this matter is appropriate where, 1. The Park District enjoys absolute immunity for any injury occurring on an access road or trail under Section 2107 of the Illinois Tort Immunity Act. 2. The Park District is absolutely immune for its discretionary policy decisions regarding the Lakefront Trail inspection and repair through its Rapid Response Program under Sections 2201 and 2109 of the Tort Immunity Act. 3. The facts fail to rise to the level of willful and wanton conduct as would be required under Section 3106 of the Tort Immunity Act. The Park District owns and operates numerous properties, including more than 600 parks, approximately 300 buildings, and the approximately 18-mile long Chicago Lakefront Trail, which is the property at issue in this case. The Lakefront Trail is a multi-use trail that runs north-south along Lake Michigan and is intended for use by bicyclists, joggers, and walkers. The purpose of the Tort Immunity Act is to prevent the diversion of public funds from their intended purpose to the payment of damage claims. The immunities provided in the Tort Immunity Act span from broader immunities to more specific immunities, including immunities that apply to certain subsets of property. For example, Section 3102 applies to all property owned by a local public entity and applies limitations on liability to only intended permitted users of the property and also includes notice requirements. Then, Section 3106 of the Tort Immunity Act provides immunity from negligence to a certain subset of governmental property, namely recreational property, where municipalities are only liable for willful and wanton conduct leading to a condition of recreational property. Then, turning to Section 3107, this section provides absolute immunity to a subset of recreational property, namely access roads and trails. Again, Section 3107 affords absolute immunity in this case where the Chicago Lakefront Trail is an access road or trail under subsections A and B. Section 3107A provides absolute immunity for any road which provides access to fishing, hunting, or primitive camping, recreational, or scenic areas. Subsection B provides absolute immunity for any hiking, riding, or fishing trip. The plain language of Section 3107 does not contain any requirement that the property be undeveloped before immunity attaches. Instead, each subsection of Section 3107 begins with the word any. Make practical sense out of that form of counsel. I mean, I can understand in relation to rustic roads and paths across scenic areas and undeveloped natural areas, but does absolute immunity make sense from a practical standpoint with respect to paved recreational bikes? Well, I think when we're looking at this statute, we have to look to the plain meaning of the words in the statute without inferring limitation or conditions that the legislature didn't intend. So the subsection A and B includes no such requirement that the land be wholly undeveloped or primitive in nature. Instead, the exceptions and limitations that the legislature provided are explicitly enumerated in the statute. For example, subsection A applies to any road, but then goes on to provide geographic limitations as the types of areas that the road provides access to. Subsection B, on the other hand, includes no such geographic limitation and instead includes modifiers or limitations as to the type of activity associated with the trail. Now, the Tort Immunity Act is in derogation of the common law and therefore must be construed strictly against the Park District, but this does not permit courts to read into the act any exceptions, limitations, or conditions that the legislature did not express. Ms. Keel, you mentioned, is the Lakefront Trail a road or a trail under 107? Our position is that in light of the features of the Chicago Lakefront Trail, it can qualify as an immunity under either subsection A or B. Subsection A, which provides immunity to access roads, the Lakefront Trail fits that definition because it is a road in the sense that it's a paved path that was designed to accommodate vehicles and it's providing access to Lake Michigan and other properties where Lakefront Trail serves as the primary means of access to the lake where it's directly abutting. With regard to subsection B, the trail, it's a trail here because Lakefront Trail by its very nature, the name, it's a trail, the trail, Lakefront Trail, it's commonly referred to as a trail, and subsection B doesn't include any requirement that the property surrounding the trail be primitive or undeveloped. So it's part of the position that in this case, the Chicago Lakefront Trail could qualify either as an access road under subsection A or a trail under subsection B. Can I ask you a question? Following up on Justice Thomas' question, does it make any sense to completely immunize a bike path that the public is invited to and encouraged to use? Public policy considerations do support a finding that 3107 is not limited to only undeveloped properties such as undeveloped paths that have roots and more obvious defects to them. It would not be good public policy for municipalities to receive less protection from liability in the form of immunities that it can afford itself of if it leaves a trail or access road in an unimproved or unmaintained condition, as this would only serve as a disincentive for governmental entities to voluntarily undertake maintenance and developmental initiatives. And even if this Court finds that the outcome in this case is harsh, that there's absolute immunity for trails and access roads, the Court still cannot read into the statute any exceptions that are not supported by the plain language of the Act, as that's an issue for the legislature to address. This Court decided on a similar issue in the Baxter v. Zion Park District case, where the Court found the Defendant Park District absolutely immune, where a boy slipped and fell on a driving board and then drowned, where the lifeboats failed to respond. At the time, Section 3108 did not have an exception for willful and wanton conduct, and it was by all means a harsh result in the case, but this Court followed the language of the statute, and then the legislature amended Section 3108 to include an exception for willful and wanton conduct. So even if this Court finds that the result is harsh here, we still have to follow the plain language of the Act. Can I ask a fact question? Are you familiar with the 606 Trail? Yes. Yes. Does it fall within either A or B of 307? My position would be that the 606, following the plain language of the statute, would qualify both as an access road and a trail. Again, the 606, like the Lakefront Trail, is paved, and it's designed and intended for park district vehicles as well as security, and then it's also providing access to properties off the 606. Now that I'm thinking about the 606, I'm not sure that it provides access to the areas enumerated in subsection A. I'm not entirely familiar with the 606. Access to fishing, hunting, or primitive camping, recreational, or scenic areas is running through the liquor park. The 606 does not provide access to those areas. It's squarely within the middle of the city, and those geographic limitations that are explicitly set forth in A would not apply. But if we look to B, it would qualify as a riding trail, because, again, there's no such geographic limitation that it must be in unimproved or primitive land, so the 606 would qualify as a riding trail under subsection B. I'm going to turn to my second point. Summary judgment was appropriate in this case where the park district is absolutely immune for discretionary policy decisions under sections 2201 and 2109. Section 2201 requires that an employee engage in both the determination of policy and the exercise of discretion when performing the act or mission from which the plaintiff's injury is alleged to have resulted. The annual lakefront trail... What about waiver as to those issues? Waiver is not a jurisdictional requirement for this court. While 2201 was not raised by the park district at the appellate stage or in our petition for leave, it was briefed before the trial court in our motion for summary judgment. And we included this argument in our briefs because it goes to the goal of this court to provide a just result in a good body of case law. Therefore, our position is that we have not waived the argument of 2201 as it was the basis for the trial court on our motion for summary judgment. And do you feel that that complies with our rules with respect to PLAs? It's nowhere in the appellate court opinion? Best practices? No. Agreed. Should it have been raised as one of our responses in our appellate brief? Should it have been raised in our petition for leave to appeal? I concede yes, but I would posit that that is not a reason for this court to not consider these subsections as a basis for affirming the motion for summary judgment. As this court can affirm the summary judgment on any basis in the record, our position is that the record has sufficient evidence to affirm on this basis. If the court would like me to move on to our 3106 argument, I can do so. So section 2201 requires both the determination of policy and the exercise of discretion. The annual lakefront trail inspection and repair process and the as-needed inspection and repairs involve both the determination of policy and the exercise of discretion. With regard to the lakefront trail inspections, there is no specific manner prescribed in how the park district must inspect the lakefront trail. Instead, it's senior project manager Bill Grenady's policy that when the weather allows, typically in April, he will drive the length of the lakefront trail twice looking for conditions that he determines require repair. Further, there are no specific rules that determine exactly what conditions require repair. Instead, Bill Grenady developed his own policy based on his expertise and experience with over 30 years in the construction business to include conditions greater than 1.5 inches or repair through the rapid response program. These policy determinations require Bill Grenady to make a judgment call as to the best solution and course of action, which would serve the interests of the park district to provide a safe trail. Bill Grenady is also exercising discretion and judgment with regard to what conditions to repair and the manner in which to repair those conditions, where he had to consider the availability of in-house tradesmen, where the park district does not have an in-house asphalt crew, as well as the outside contractor's workload and expertise in performing this type of repair. With regard to the specific crack at issue, Bill Grenady had to make the decision as to whether to include this condition in his existing scope of work or the rapid response RFP or request for proposal or to address the crack through other means. Here he made the decision to add the crack repair to the existing scope of work which was being bid out to the rapid response contractors. So you're saying that every judgment call made here in this situation in the Chicago Park District is immune? So if the park district decides not to repair anything, that's immune? Because it's a judgment call? The degree or the extent to which the repairs are required, yes. The fact that the inspection has to occur in the first place, no. The fact that unsafe conditions per the internal operating guidelines, informal operating guidelines, would require that Bill Grenady address unsafe conditions, but it's his judgment call that he's balancing the competing interests here for the different avenues in which to allow for the repairs to occur and then exactly in the continuum of what conditions require repair. This can't be a situation where the park district is required to repair every condition on the lakefront trail. 18 miles and 600 parks and 300 facilities, there are limited funds, limited crews, limited contractors in the rapid response program. So the decision to take care of the lakefront and not parks in other neighborhoods, that's all immune and those run down when people are injured. That decision making is all immune? With regard to the specifics of what repairs to conduct and the manner in which to repair, to conduct those repairs, yes. Yes, this involves both the considering available resources, time, efficiency, safety, fiscal considerations. All of those factors went into determining which conditions to repair and the manner in which to repair them. Lastly, even if the sport were to find that the park district does not enjoy absolute immunity under Sections 3107 and 2201 and 2109, the discretionary decisions, summary judgment is still appropriate as the facts fail to rise to the level of willful and wanton conduct. Section 1210 of the Tort Immunity Act defines willful and wanton conduct as a course of action which shows an actual or deliberate intention to cause harm or which, not intentional, shows an utter indifference to or conscious disregard for the safety of others. There's no question here that there is not any intentional act, so what we're looking at is the words utter indifference or conscious disregard. This is not a case where the park district took no action. Instead, the Chicago Park District's 2013 Lakefront Trail Inspection and Repairs, the spot inspection for the subject condition, the crack, and then the decision to include the crack in the scope of work to be addressed with the Rapid Response Program, all display an immediate and ongoing concern for safety. Lakefront Trail Repairs were handled almost exclusively through the Rapid Response Program. This Rapid Response Program is an expedited procurement process which the park district used to assign projects to pre-qualified general contractors. The pre-qualified pool, the contractors that already responded to our request for qualifications, the park district had already assessed their qualifications, and then put them into a pool of contractors that they deemed qualified to address the type of repairs that would be necessitated for the Lakefront Trail. Further, with regard to the scope of work for the 2013 repairs, all six conditions were set for repair because they represented safety issues. This was testified to by Rob Rayman. Here, any criticism that the park district's response was insufficient, or that through the exercise of hindsight, the park district did not take any alternative, more expedient means of addressing the condition, such as giving a verbal authorization as opposed to a written notice to proceed, does not serve as evidence of willful and unwanted conduct. At most, this would only give rise to a claim for ordinary negligence. Generally, the issue of whether willful and unwanted conduct is a question for the jury. However, the court must first decide as a matter of law whether the undisputed facts are sufficient to create a question that should go to the jury regarding the willful and unwanted nature of the conduct. In this case, the facts so overwhelmingly favor the moving party that summary judgment was appropriate under 3106. Therefore, as a matter of law, the park district's actions did not rise to the level of willful and unwanted conduct. Summary judgment was appropriate under 3106. Again, summary judgment in this matter was appropriate for three reasons, the three reasons discussed. Lakefront Trail supported absolute immunity under Section 3107 of the Tort Amenity Act for access roads and trails. The park district was absolutely immune for discretionary policy decisions leading to the inspection and maintenance of the Lakefront Trail under 2201 and 2109. Lastly, the facts fail to rise to the level of willful and unwanted conduct as would be required under 3106. Therefore, the court should reverse the decision of the appellate court and affirm the decision of the trial court. Thank you for your time. No further questions. I will see you in the remaining time. Thank you. Ms. Lewis? Good morning, Mr. Chief Justice, counsel. May it please the court. The Illinois legislature enacted Section 3106 to encourage and develop park districts and recreational properties for Illinois citizens. Did you give us your name? Did you give us your name? I apologize, Jill Lewis. Okay, thank you. I'm not sure that you did. Thank you. The legislature in enacting 3106 to encourage and develop parks struck a balance between that purpose and ensuring the safety of the citizens of Illinois by providing immunity only for ordinary negligence. That's because we as a society, we want and need parks and recreational property. But we also want to be safe. And the legislature surely had that in mind when they enacted 3106 and provided only immunity for ordinary negligence. At the same time, the Illinois legislature enacted 3106. It also enacted other sections that pertain to other types of public property. And there's a continuum of immunities, as I pointed out in my brief. And there's a reason why the legislature would have assigned no immunity to 3102 for streets and sidewalks and limited immunity for recreational property. And then we get to 3107. And the legislature decided they wanted to have absolute immunity for the property described in 3107. So why would they do that? What would be their intent? So we start by looking at the language in 3107. And I know probably everyone knows it by heart by now. I'm going to paraphrase. You know, any road providing access. Okay, so we have an access road to hunting, fishing, or primitive camping, recreational, or scenic areas. So I grew up not far from here in Bloomington, Illinois. And one thing I learned from my English teachers was grammar. By including the first or in the 3107A, the legislature intended for the word primitive, the adjective primitive, to modify the three nouns that followed. So they didn't need to put in primitive camping, primitive recreational, or primitive scenic, because it's understood by saying, or primitive camping, recreational, or scenic, that it applies and modifies all categories. So when we look, what is primitive? It's not developed. It's natural. So then we look at 3107B. What's the language in 3107B? So we have a hiking, riding, fishing, or fishing trail. Hiking, riding, hunting, fishing trail. It's not just any trail. It's a hiking trail. It's a riding trail. It's a fishing trail. What did I leave out? Hunting trail. Hunting, fishing, hiking, riding. What comes to my mind is horseback riding, hunting, fishing. These are things that we do in nature. Things that we do in the wilderness, outdoors. We're not doing any hunting on the lakefront trail in Chicago or the 606. We're not doing any fishing. We're not doing any horseback riding. This statute, 3107, as a whole, applies by its language to primitive, undeveloped, natural land. Ms. Lewis, I have a question, though. Isn't it one of the first steps is to determine what the definition of road is and what the definition of trail is? What is the ordinary meaning coming to you in the terms of road? As far as I'm concerned, it means a vehicle. Just another reason why it applies to undeveloped property. You're absolutely right. The common vernacular for road is vehicular traffic. The public cannot drive their cars on the lakefront trail. But it's called the trail. Yes, but it is a hiking trail because hiking, fishing, hunting, and riding are adjectives that modify trail. That's what grammar dictates. Isn't it a paved trail for vehicles, for Park District vehicles? Don't they go up and down, security, other vehicles? I'm not sure I understand the question, but I will say that road has been defined as a hard surface. I believe the Park District defined it as that. And if we're going to define road as a hard surface, then that would include every parking lot, every sidewalk. It would lead to absurd results. I think that based on the language, the grammar, it can only be read one way, and that is that these are all natural, undeveloped areas that are entitled to absolute immunity. And they should be, as the legislature obviously recognized, because we want these lands to remain in their natural condition. We don't want anyone maintaining them. That is not what we have with the lakefront trail. It is well-maintained, and the Park District touts it as being well-maintained. So beyond the plain language of the statute, we look at the case law. And I should point out here, I'm including 3107B, but that has been waived by the Park District. Not only did they not raise it in their PLA, they didn't raise it in the public court, they didn't even raise it in the trial court. But be that as it may... Justice, am I correct that the only other one was 307A? I mean 107? Pardon? I'm sorry. Did I miss anything? 107A and B. Those were raised. They did not raise 3107B in the trial court. They raised 3107A only. So how do you take your opponent's concession today that the 606, clearly a riding trail, clearly a walking trail, running trail, is not immune under A? The 606 is not? I take it if the 606 is not, then the lakefront trail is not. Because the lakefront trail is surrounded by developed man-made areas and structures. And it affects a six-lane lakeshore drive. There are skyscrapers nearby. There's the Shedd Aquarium, which is where Isaac Cohen, the area where he was injured... The only thing primitive about the lakefront trail is Lake Michigan. And that is even questionable because of the harbors and everything else. Does it have access to scenic areas? Well... You could say everything can have access to scenic areas. A sidewalk can have access to a scenic area. If I'm in a park and I want to go look at the skyline, everything has access to something else. But when we think of access road, just like road, we think vehicular traffic. When I think of access road, and I think most people would think this, it's a frontage road. It's not... Nobody says, oh, I want to go ride my bike on the access road. I mean, it defies logic that the lakefront trail would be considered an access road and certainly not one that would be providing access to primitive camping or recreational or scenic areas and certainly not one that should never be maintained. Every case that has interpreted 3107 and except for Scott, although Scott predated Goodwin and all the others that followed, they all involve forest preserves. And Goodwin, which was the only bike path in a city park, analyzed the statute probably the clearest when it talked about looking at the statute as a whole and the reason for having absolute immunity is because these areas should be primitive and undeveloped because we don't want to maintain them. We want them to be natural. And so absolute immunity should apply in those situations. But in situations where it's a developed city park, a very highly developed city park, that same logic does not apply. There's unfortunately no legislative history, but there was a law review article written a couple years after the statute was enacted and they also, the author in that article, and I'm presuming that he knew what was happening at the time, concluded that 3107 was for undeveloped natural property. So what about public policy? The Chicago Park District actively, very actively, encourages people to use the Lakefront Trail. Not just Chicago residents, they encourage tourists from all over the world, come see our Lakefront Trail. And in fact, they're so successful with their marketing campaign that 60,000 to 70,000 people a day in the summer, on a weekend, are using the Lakefront Trail. Not only do they encourage people to use it, they say, they tout it as being very safe, well-maintained, and beautiful. So if you are encouraging people to come, it would defy logic to them and say it's going to be safe to not maintain it, or at least to not be held liable at all for any injuries that might occur on it. I should point out that the city of Chicago is, and actually I should thank ITLO for this, in their amicus brief, pointing out that the city is striving to become one of the most bike-friendly cities in the world. And we see that with the 606, with the Lakefront Trail. They are building this transportation corridor. So the thought that there would be absolute immunity for injuries on the Lakefront Trail goes against the plain language of the statute. It goes against the ordinary, common usage and meaning of roads and riding trails that would counter up horseback riding. And the case law supports that it is undeveloped natural lands, and certainly public policy. Because without any possibility of liability, it is, I'm not going to use the word guarantee, but almost certain that the Lakefront Trail would fall into a state of disrepair. So by allowing the park district to be held liable for willful and wanton conduct, we have this balance. And so the trial court granted summary judgment on willful and wanton. Despite the overwhelming facts, it's undisputed that the park district knew about this crack. And they knew it was dangerous. They thought it was severe. They thought it needed emergency repair. So what did they do? One guy called another guy, and the second guy put it on a list. And it sat on that list. And nobody followed up at all. Nobody supervised the sub that was finally hired, or the sub's sub, who fixed a non-emergency repair before they fixed the severe emergency repair. Why? Because Mr. Granati didn't check to make sure that the severe emergency dangerous condition was repaired. We have a crack in the middle of the Lakefront Trail where 60,000 to 70,000 people are using it a day on a summer weekend. And that crack just happens to be wide enough for a bike tire that Isaac Cohen's bicycle tire got stuck in, and he fell, and he got injured. Why? Because the park district did not do any of the things that it's supposed to do. Mr. Granati was not supposed to put a dangerous condition on the rapid response program, which, by the way, is not rapid at all. And he was supposed to get it done right away. Mr. Arlo, who got a patron complaint, and went out and looked at it and said, Oh, my gosh, this is dangerous. Did he call one of the hundreds of tradesmen in-house to fix it like he should have? No. Did anyone put a barricade around it? No, even though they had it available. Did anyone spray paint it? No, even though they had that available. They planned to repair it one day. But planning to make a repair is not fixing and correcting the dangerous condition. And so it existed. And how long did it exist? Weeks? Months? I don't know. It could be starting, we don't really know. Whenever the snow melted in that year, which the weather reports indicate it was March, Arlo knew about it. And Arlo says, I told Granati right away. Granati says, I didn't learn about it until June. Who's telling the truth? I don't know. That's for the jury to decide, not for the trial court. The case law that I am familiar with, that I have been familiar with in my career, is that to have Willful and Wanton, if there is knowledge of a dangerous condition, and that dangerous condition is not repaired or rectified or anyone is warned about it, that's Willful and Wanton. You can't leave a dangerous condition on the Lakefront Trail that 60,000 to 70,000 people are encountering. What if it had been a child in a stroller? What if the stroller wheel had gotten caught in that crap and the child flew off? The practitioner just wants to wash his hands and walk away? That is not what the Illinois legislature intended. And it is not what this public policy would allow. 2201. In addition to not raising 3107B in their PLA, they didn't raise it in the appellate court. Now, I know, I know, waivers are a limitation on the parties, not the court. But in this case, it doesn't even... If you heard it, it wouldn't make any difference because 3106, which the Park District readily admits applies, would trump 2201. And this is from the Murray v. Chicago Youth Center case that was before this court a number of years ago. And there's a great discussion about how 2201 has preparatory language, something to the effect, except it's otherwise provided by law. And this court found that the otherwise provided by law was, in that case, 3109. In this case, the otherwise provided by law is 3106. By having that preparatory language, the Illinois legislature was saying, we don't want there to be absolute unity in every circumstance. So we're going to put in this fail-safe, so to speak. So for the same reasons 3109 trumped 2201 in Murray, 3106 would trump 2201 here. And even if we get to the merits of 2201, we have a situation where... I think it was Mr. Reitman, one of the Park District people said, this is a collaborative effort that's repairing the Lakefront Trail. And it's not just the Rapid Response Program Council. I believe Mr. Reitman stated that. They have an as-needed repairs, and they've got the Rapid Response. As-needed, that means get it done right away. And that is for unsafe conditions that present risk, harm, injury, like a huge crack in the middle of the Lakefront Trail. Dangerous conditions aren't supposed to be put on the Rapid Response Program. So somebody from above in the Park District said, time has expired, you may finish your thought. Really? I didn't even see the light. It's on. Take a look. Okay. I see it. Can I finish my... Okay, so someone from above at the Park District thought, we're going to spend this much money on repairs. And then the supervisor said, you're going to do this. And then way down the line, Mr. Picotti carries out his ministerial tasks. No discretion, no absolute immunity. Thank you. Thank you. Goodbye. First, I want to address the layers of immunity that the Tort Immunity Act provides. I like to think about it more as a funnel, where we are going down to more specific immunities. Here, between 3106 and 3107, it's clear that 3107 applies to a specific subset of recreational property, access roads, and trails. Whereas 3107 doesn't have the exception for willful, wanton conduct. And that's clearly set forth by the language of the legislature. Again, if the legislature wants to add an exception for willful, wanton conduct for these types of recreational property, it would do so. Also, the Planning Council points out in the amicus's position that absolute immunity doesn't address the changing attitude toward bicycles in Chicago. Again, that is an issue to be addressed by the legislature, not the courts. Reading in exceptions and limitations into the Tort Immunity Act, they're not provided by the clear and ordinary language. Planning Council also brought up the point that if absolute immunity is given, then none of the trails and access roads will ever be maintained because municipalities don't need to. But that's not an issue that's come before the court. That's not even an issue in this case. Instead, here, the park district does expend resources on maintaining one of its main features that it holds out for the city of Chicago. There's no evidence that by applying this immunity that municipalities and park districts are going to stop maintaining their property because they don't have to. Because that goes against the mission and core values of these organizations. And again, if that were to become a problem down the road, that would be something for the legislature to address. Legislature amends the statutes to address ongoing and new problems that arise with how their laws are being carried out. Planning Council also talks about the primitive modifier under subsection A of 3107. If the legislature meant for subsection A to only apply to undeveloped or primitive property, it would have included a modifier of that nature at the beginning of its list rather than a modifier within the list of hunting, fishing, primitive camping. And it didn't do so. But I would also propose that for purposes of this case, whether primitive modifies only camping or also recreational and scenic is immaterial because the Chicago Lakefront Trail abuts Lake Michigan, which by its very nature as a body of water, is primitive and undeveloped. You've mentioned scenic views offered by Lake Michigan. And what's referred to as the third coast. I don't think that anyone would say that views of Lake Michigan are any less scenic than views of the ocean. And also the primitive recreational opportunities offered by the lake. And also, riding isn't defined under subsection B of 3107. It isn't limited to just horseback riding. It doesn't say that. I would propose that a reasonable definition of riding is animal riding, including horseback riding. And then all types of vehicular riding, including bicycling. Any vehicular riding that's allowed per the trail rules. With regard to subsection A, Councilman mentioned that the Lakefront Trail cannot be used by public vehicles. But again, there is no such limiting language in subsection A that requires the public to be able to use the access road, or certain categories of vehicles to be able to use the access road. It just says any access road that provides access to these areas. And again, the Lakefront Trail, even if we're looking at primitive modifying camping, recreational and scenic, does provide access to primitive scenic and primitive recreational opportunities, as well as fishing opportunities in the lake, which precedes the modifier primitive in subsection A of 3107. Now, the fact that the Park District develops some property along the lakefront to include bathrooms, restrooms, peach houses for lifeguards, rental stations, restaurants, should not strip the Lakefront Trail of immunity, where there's no such limitation in the statute. It requires the property surrounding the access road or trail to be wholly undeveloped. Further, the courts have, for the 3107 case law, determined that trails are afforded immunity under 3107B, even where there is some development. For example, one of the cases, there are constructed bridges and boardwalks that allow the trail to access wetlands and areas that have water, and that was deemed acceptable for the purposes of 3107, to allow the trails to access areas that would otherwise be unable to be accessed without those man-made developments. And also, the fact that the Chicago Lakefront Trail also directly abuts Lakeshore Drive in the city of Chicago, which is property that is neither owned nor controlled by the Park District, also does not strip the Park District of immunity in this case, as again, there's no requirement in the statute that the property be undeveloped. In the Mull case, the courts determined that development along the trail, especially development by entities other than the entity at issue, shouldn't serve to strip them of immunity, where it doesn't have any control over what's happening on property that they don't own, operate, or maintain. Now, with regard to 3106, again, I would like to stress that this isn't a case where the Park District didn't take any action. This wasn't a case where the Park District was just planning to do something. Instead, when the call came in about the crack, Bob Arlo called Bill Gurnity. They went out to inspect the condition and determined, yes, this requires repair. There's nothing in the record to support that the subject crack was more severe than the other safety issues that were included on the scope of work, or that the rapid response process was going to cause an unreasonable delay in repairing the condition. Again, the rapid response program is already an expedited procurement process where we need to allow governmental entities sufficient time to go through the purchasing and procurement process. There was no in-house asphalt crew at the Park District. This was a project that required it to be bid out, and the Park District has the rapid response program as an expedited method for it to assign projects to contractors to complete repairs. Bill Gurnity also talked about the fact that there's no deadline assigned to Lakeland Trail repairs because the timing that the repairs are being done are going to be conditioned on the weather, availability of materials, and the availability of the rapid response contractors. Again, it stresses the number of people that are using the trail, but the call that Alvaro received was the only call and complaint regarding the crack. There was no other reported instances of injury, and these factors support a finding that the Park District's response to the report of the crack was reasonable in this case. Therefore, I'd like to conclude again that we're asking this Court to reverse the decision of the Appellate Court and instead affirm the decision of the Trial Court, granting summary judgment in the Park District's favor. If there's no further questions, I see no time. Seeing none. Thank you. Case number 121800 Cohen v. Chicago Park District will be taken under advisement as agenda number 15. Ms. Kyle, Ms. Lewis, we thank you for your arguments today, and you are excused with our thanks.